[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10573
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 3, 2010
JOHN LEY
CLERK

D.C. Docket Nos. 2:02-cr-00052-RWS, 2:04-cv-00097-RWS

IRVIN LAMAR SIMPSON,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 3, 2010)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Irvin Lamar Simpson, a federal prisoner, appeals the district court's denial

of his 28 U.S.C. § 2255 motion to vacate his sentence. After review, we affirm.

# I. BACKGROUND

## A. Drug Seizure and Conviction

On May 10, 2001, law enforcement officers conducted video surveillance on Cooley Drive, a dead-end street, and observed Simpson engage in what appeared to be hand-to-hand drug transactions. Simpson held and opened up a plastic bag during the transactions. While under video surveillance, Simpson placed the plastic bag inside a towel and hid it under the foundation of a residence at 925 Cooley Drive. One of the officers retrieved the plastic bag from under the house. Inside was 12.8 grams of cocaine base.

After a jury trial, Simpson was convicted of an unrelated drug charge (Count 1) and possessing at least five grams of cocaine base on May 10, 2001 (Count 2). The district court imposed a 240-month sentence on Count 1 and a 360-month sentence on Count 2, with the two sentences to be served concurrently. Simpson's convictions and sentences were affirmed on appeal. See United States v. Simpson, 82 F. App'x 218 (11th Cir. 2003).[1]

## B. Section 2255 Evidentiary Hearing

---

[1]At sentencing, Defendant Simpson had six prior convictions that resulted in 13 criminal history points and qualified him as a career offender. With a criminal history category of VI, Simpson's guidelines range was 360 months to life.

In May 2004, Simpson pro se filed this § 2255 motion to vacate his total 360-month sentence, arguing, among other things, that his trial counsel's failure to file a motion to suppress the drugs found at 925 Cooley Drive constituted ineffective assistance.

The district court referred the case to a magistrate judge. At an evidentiary hearing, Defendant Simpson, his aunt, Ophelia Parks, and his uncle, Isaac Simpson, testified that Isaac Simpson owned the house at 925 Cooley Drive.[2] Isaac Simpson inherited the house from his mother (Defendant Simpson's grandmother). They also testified that, at the time of the drug seizure, Defendant Simpson was living in the house with his cousin, Peyton. Defendant Simpson began renting the house in November 2000 and paid his uncle $300 a month in rent.

Defendant Simpson testified that he told his trial attorney, William Morrison, that he lived at 925 Cooley Drive and asked Morrison to file a motion to suppress. Simpson denied ever telling Morrison that he lived with his father on Floyd Road. Simpson acknowledged that the utilities at 925 Cooley Drive were in Peyton's name.

---

[2]Parks lived at 933 Cooley Drive in the house next door to 925 Cooley Drive. Isaac Simpson owned the 933 Cooley Drive house, too.

Attorney Morrison testified that he met with Defendant Simpson several times at the jail while preparing Simpson's case. Morrison explained that, based on his practice, he would have: (1) considered whether he could bring a motion to suppress, (2) elicited facts from Morrison from which to make a determination of whether there was standing to bring a motion to suppress, and (3) been concerned about who owned or occupied the house. Morrison had notes of his interviews with Simpson.

According to Morrison, Simpson never told him that he lived at 925 Cooley Drive during those meetings. Morrison believed that he would have asked Simpson "something that would have elicited that information had he lived at that particular location." Furthermore, based on his notes for the initial interview, Morrison believed that he discussed Simpson's "nexus" to the house and learned that Simpson's grandmother and uncle owned it.

Before interviewing Simpson, Morrison reviewed police reports, none of which listed Simpson's address as 925 Cooley Drive. Morrison explained that, had he seen the 925 Cooley Drive address in the reports, he would have asked Simpson about it. Morrison tried to discuss with Simpson what he was doing around the house at the time of the surveillance videotape, but Simpson was "very cautious" and "hesitant to discuss the facts of the case."

4

Two months later, Morrison met again with Simpson and gathered basic biographical information. Based on his notes, Morrison testified that Simpson said "that he was 32 years old, that he had two children, [and] that he lived at 2467 Floyd Road," which was a trailer one block away from the Cooley Drive location of the drug transactions. Simpson told Morrison he lived in the trailer with his father and that the house at 925 Cooley Drive belonged to his grandmother. Morrison explained that he did not "approach this matter from one of standing," because in his professional opinion "this was as clear an exigent circumstances, plain view case as I had ever seen." Morrison could not recall whether he asked Simpson if he lived at 925 Cooley Drive.

Agent Jeremy Grindle with the Hall County Sheriff's Office testified that on May 10, 2001, he and another agent conducted video surveillance of the Cooley Drive neighborhood. Agent Grindle described the neighborhood as residential with lots of people walking and driving by. Agent Grindle directed the other agent to seize the drugs under the house at 925 Cooley Drive without a warrant because he did not want to compromise an ongoing investigation and because there were lots of children in the area that he did not want to get access to the drugs. Agent Grindle never saw Simpson enter the house at 925 Cooley Drive, and Simpson did not seem aware that he was under surveillance.

5

## C.       Report & Recommendation

The magistrate judge issued a report ("R&R") recommending that Simpson's § 2255 motion be granted. The R&R determined that the warrantless seizure of the drugs was not justified by the plain view doctrine or exigent circumstances. The magistrate judge did not explicitly reconcile the conflict between Morrison's and Simpson's testimony about where Simpson told Morrison he was living. Rather, the magistrate judge appeared to assume that even if Simpson told Morrison he was living at 2467 Floyd Road, Morrision was ineffective because: (1) Morrison never interviewed Defendant Simpson's aunt or uncle; (2) Morrison never determined the living arrangements at 925 Cooley Drive; (3) Simpson "may have been reluctant to admit that he was residing at 925 Cooley Drive on May 10, 2001 because he believed that such an admission would more definitely connect him to the 12.8 grams of cocaine base seized there," but "a reasonably competent defense counsel would have explained to [Simpson], . . . that he could move to suppress evidence of the 12.8 grams of cocaine base if he had a legitimate expectation of privacy in that residence, i.e., if he was residing at 925 Cooley Drive or was a guest of the owner or then current occupant on May 10, 2001"; and (4) it appeared Morrison did not provide such an explanation and "made no real effort to determine" Simpson's standing to file a motion to suppress

6

because he "simply did not believe that such a motion had any chance of success, regardless of whether [Simpson] had standing to file it or not."  (Emphasis added). The R&R concluded that Morrison's failure to investigate Simpson's standing was unreasonable and prejudiced Simpson because there was a reasonable probability that a motion to suppress would have been successful.

## D.    District Court's Order

The government objected to the R&R, arguing, <u>inter alia</u>, that it was reasonable for Morrison to stop investigating Simpson's living arrangements once he learned that his client lived with his father in a trailer at 2467 Floyd Road.

The district court denied Simpson's § 2255 motion.  The district court adopted the R&R's statement of the applicable Fourth Amendment law, but rejected its application of the facts to the law.  The district court concluded that, because Simpson told Morrison he lived at 2467 Floyd Road, Morrison was not ineffective for relying on that statement and not investigating further his connection to 925 Cooley Drive and possible standing, as follows:

> While the Court agrees that counsel has a duty to fully investigate his client's case and all legitimate defenses, the Court does not find counsel to be ineffective for not [sic] accepting, without further investigation, his client's representations concerning such basic facts as his place of residence.  Nor does the Court find that counsel is ineffective if he does not frame his questions to his client with the legal consequences of his client's possible responses.  [Simpson] told Mr. Morrison that he lived

7

at 2467 Floyd Road. The Court is unwilling to conclude that in spite of that representation by his client, Mr. Morrison would be ineffective if he did not advise [Simpson] that if he lived at 925 Cooley Drive, the evidence against him could possibly be suppressed and then make further inquiry about his residence.

(Citations omitted.) The district court acknowledged that Morrison did not focus on standing because of his mistaken belief that the seizure was permissible under the plain view doctrine and due to exigent circumstances. However, Morrison did not ignore the seizure issue and "reasonably assumed standing was lacking" based on Simpson's statements (that he lived at 2467 Floyd Road) and the corroborative police reports.

The district court granted Simpson a certificate of appealability on the following issue: "Did Simpson's trial counsel provide him with constitutionally ineffective assistance by failing to investigate and file a motion to suppress the cocaine base seized at 925 Cooley Drive on May 10, 2001, and used as evidence against Simpson at his trial?"

## II.  DISCUSSION

### A.    Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance, a defendant must demonstrate two things: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense."  Strickland v.

8

Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  However, courts need not "address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697, 104 S. Ct. at 2069.[3]

As to the first prong, the defendant has the burden of persuasion "to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable," by establishing "that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance."  Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir. 2000) (en banc).  "The reasonableness of a counsel's performance is an objective inquiry," such that "a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Id. at 1315.  "In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Id. at 1316 (quotation marks omitted).

**B.     Counsel's Duty to Investigate**

---

[3]We review claims of ineffective assistance of counsel de novo.  Chandler v. United States, 218 F.3d 1305, 1312 (11th Cir. 2000) (en banc).  In so doing, we will not reverse a district court's credibility finding "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it."  United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S. Ct. at 2066. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id.; see, e.g., Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1210-11 (11th Cir. 2007) (concluding that counsel was not ineffective for failing to investigate client's childhood abuse when client never told him about it and had "indicated just the opposite of poor treatment" (quotation marks and brackets omitted)).

## C. Simpson's Claim

Here, competent counsel could have reasonably concluded that Simpson lacked standing to challenge the warrantless seizure of the drugs. According to the district court's findings, which Simpson does not challenge on appeal, Simpson never told Morrison he lived at 925 Cooley Drive. In fact, Simpson told

10

Morrison he lived in a trailer with his father at 2467 Floyd Road. Morrison reviewed the police reports, none of which listed 925 Cooley Drive as Simpson's address. When Morrison discussed with Simpson his connection to the house, he learned that it was owned by Simpson's uncle, not Simpson. In short, none of the information available to Morrison at the time, including Simpson's own statements, indicated that further investigating Simpson's place of residence would have been fruitful. Under these circumstances, Morrison's failure to further investigate and to file a motion to suppress the drugs seized at 925 Cooley Drive on May 10, 2001 was not deficient performance.

Because Simpson failed to meet his burden to show his trial counsel's performance fell outside the wide range of professionally competent assistance, the district court did not err in denying his § 2255 motion.[4]

**AFFIRMED.**

---

[4]Because we conclude that the district court did not err as to trial counsel's performance, we do not address whether counsel's performance prejudiced Simpson. See Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.